PER CURIAM.*
_JjWe granted certiorari in this case to determine whether the district court abused its discretion in awarding damages in a class action suit resulting from a chemical leak. For the reasons that follow, we conclude the district court abused its discretion.
UNDERLYING FACTS AND PROCEDURAL HISTORY
This case arises from a chemical leak at a plant in Taft, Louisiana owned by defendant, Union Carbide Corporation. The leak commenced about 10:00 p.m. on Thursday, September 10, 1998, and lasted until 3:00 p.m. on Friday, September 11, 1998. Approximately 4.6 million pounds of naphtha vaporized as a result of the leak, and it was dispersed into the communities surrounding the facility, including the towns of Montz and Killona.
Thereafter, plaintiffs filed the instant class action litigation. The district court certified a class of persons living within a designated geographical area during the time of the leak and who “experienced the physical symptoms which include any or all of the following — eyes, nose, or throat irritation, coughing, choking or gagging, Lor nausea, as a result of their exposure to naphtha or other chemical substance release from Union Carbide.” The certification judgment was affirmed on appeal. *1254 Howard v. Union Carbide Corporation, 04-1035 (La.App. 5 Cir. 2/15/05), 897 So.2d 768, writ denied, 05-769 (La.5/6/05), 901 So.2d 1106.
By agreement of the parties, the district court conducted a trial of certain randomly-selected claimants[1] to determine: (1) whether claimants were exposed to the naphtha fumes; (2) whether they suffered compensable damages; and (3) the amount of them damages.
At trial, the district court heard testimony from Dr. John B. Sullivan Jr., a medical toxicologist, who was accepted as an expert in the fields of medical toxicology and environmental health. Dr. Sullivan testified there was no doubt in his mind that an exposure to naphtha at certain concentra-' tions could produce symptoms the claimants reported. In his opinion, an acute onset of symptoms would induce some irritation of the eyes, nose, and throat. He also testified that it was reasonable to assume someone closer to the source would receive a higher concentration than someone further away.
The district court also received into evidence the deposition of Dr. William Nas-setta, an expert in occupational medicine. Dr. Nassetta testified that usually people experience irritant types of effects from exposure to naphtha. He described these effects as stinging in the eyes, tearful eyes, and stinging in the membranes that line the nose, and he also noted a person could get a sore throat or experience coughing. He further testified that naphtha is a central nervous system depressant, and one could see some non-specific central nervous system signs or symptoms, such 13as headaches, nausea, dizziness, and a sensation of almost feeling drunk. Dr. Nassetta stated there could be a plume release within inches of a person without any effect to that person, but a person nearby could have a very significant effect.
At the conclusion of trial, the district court awarded damages to twelve claimants, with general damage awards ranging from $1,500 to $3,500.[2] The court awarded the highest damages, $3,500 each, to Martin Granier, Lionel Harry, Anne Ockmond, Franklin McGinnis, and James McCormick, who were in the plant at the time of the release. The next highest award,$2,500, was made to Lisa McKnight, who was working near the plant on the night of the release. The court awarded $2,000 each to June Gross and Dorothy Richard, who lived in Montz, Louisiana. Finally, the lowest awards, $1,500 each, were made to Ella Mae Darrensbourg, Colleen Lathers, Tone Silas, and Cynthia Johnson-Gordon. These claimants lived in Killona, Louisiana, near the fringe of the exposure area.
Defendant filed a motion for new trial, arguing the general damage awards were excessive, considering the exposure and proof of damages. Specifically, it noted none of the claimants testified they sought medical attention, evacuated, or missed any work. The district court denied the motion for new trial.
Defendant appealed. The court of appeal affirmed the twelve damage awards at *1255 issue in a split decision.[3] Two judges dissented in part, and would have reduced the damage awards. Howard v. Union Carbide Corp., 08-750 (La.App. 5 Cir. 10/27/09), 21 So.3d 1084.
|4Upon defendant’s application, we granted certiorari to consider the correctness of the court of appeal’s opinion. Howard v. Union Carbide Corp., 09-2750 (La.4/23/10), 32 So.3d 808.
DISCUSSION
At the outset, we find no error in the district court’s conclusion that the twelve claimants at issue proved they sustained damages as a result of defendant’s negligence. It is well-settled law that factual determinations are subject to review for manifest error. Ferrell v. Fireman’s Fund Insurance Co., 94-1252, pp. 3-4 (La.2/20/95), 650 So.2d 742, 745. In such a review, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse, even though convinced that had it been sitting as the trier of fact it would have weighed the evidence differently. Id. at 882-883. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Id. at 883. Further, where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Indeed, where the factfinder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Id. at 845.
In the instant case, the district court heard testimony from the claimants regarding their exposure to the naphtha odor and resulting symptoms, and concluded |sthese claimants suffered damage as a result of defendant’s negligence. We find no manifest error in this conclusion.
Similarly, we cannot say the district court erred in finding those claimants who were located in closer proximity to the release site suffered more exposure than those claimants who resided further away. The district court placed great weight on the testimony of Dr. Sullivan, who was accepted as an expert in the fields of medical toxicology and environmental health. Dr. Sullivan explained it was reasonable to assume someone closer to the source would receive a higher concentration than someone further away. Therefore, we do not find the district court’s findings in this regard to be clearly wrong.
We now turn to the issue which prompted our grant of certiorari in this case — namely, the quantum of general damages awarded by the district court. It is well-settled that vast discretion is accorded to the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; Duncan v. Kansas City Southern Railway Co., 00-0066 (La.10/30/00), 773 So.2d 670. This vast discretion is such that an appellate court should rarely disturb an award *1256 of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, 623 So.2d at 1260.
The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. National Emergency Serv. Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; Reck v. Stevens, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its “much discretion” is a resort to prior awards appropriate, and then only |r,for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
The record reveals claimants suffered relatively minor symptoms from their exposure, such as watering eyes, nose or throat irritation, coughing, and headaches. None of the claimants sought or required medical attention as a result of the exposure. They were not required to evacuate from the area as a result of the chemical release, nor did they miss any work or school. Dr. Sullivan testified the symptoms experienced by the claimants would resolve themselves in a day, and could be treated with over-the-counter medications such as Visine.
Considering the minimal nature of the claimant’s injuries, we conclude the district court’s awards of $1,500 to $3,500 represent a clear abuse of discretion. In reaching this conclusion, we recognize, as we did in Youn, 623 So.2d at 1261, that “[reasonable persons frequently disagree about the measure of general damages in a particular case.” Nonetheless, Youn also made it clear the general damage award must “bear a reasonable relationship to the elements of the proved damages.” Id. In the case at bar, the damages proven, such as eye, nose, and throat irritations, are not unlike the symptoms suffered by persons afflicted with common seasonal allergies. There is simply no reasonable relationship between the claimants’ injuries, which might be characterized as mere annoyances, and the damage awards ranging from $1,500 to $3,500.
Having found the awards represent an abuse of discretion, we now turn to a review of prior awards for the purpose of lowering the awards to the highest point which is reasonably within that discretion. Coco, 341 So.2d at 335. A review of the jurisprudence indicates the general damage awards made in cases involving similar Jjfacts typically ranged between $100 and $500.[4] For example, in Adams v. CSX *1257 Railroads, 01-114 (La.App. 4 Cir. 4/20/05), 902 So.2d 413, the plaintiffs were exposed to fumes from a leaking railroad tank car. The Adams court awarded $500 in physical pain and suffering to a plaintiff who suffered eye and nose irritation and experienced ongoing stomach cramps. Another plaintiff who suffered eye, nose, and throat irritation for two days, but did not seek medical attention, was awarded $200 for physical pain and suffering. The Adams court awarded $100 for physical pain to a third plaintiff who experienced watery eyes and a sore throat, which he treated with Visine and Sucrets. Id. at p. 6-8; 902 So.2d at 417.
Also instructive is Adams v. Marathon Oil Co., 96-693 (La.App. 5 Cir. 1/15/97), 688 So.2d 75. In that case, the plaintiffs in a class action alleged they were injured when the defendant negligently released ethyl mercaptan. The evidence indicated the plaintiffs suffered some mild physical discomfort such as membrane irritation, fatigue, and nausea. For these injuries, the court awarded damages ranging from $0 to $500.[5]
Applying this range of damages together with the proximity approach adopted by the district court, we conclude the highest damage awards supported by the record are as follows:
| ^Claimants who were in the plant at the time of the release (Martin Granier, Lionel Harry, Anne Ockmond, Franklin McGinnis, and James McCormick), $500 each.
Claimant who was working near the plant on the night of the release (Lisa McKnight), $250.
Claimants residing in Montz, Louisiana (June Gross and Dorothy Richard), $150 each.
Claimants residing in Killona, Louisiana (Ella Mae Darrensbourg, Colleen Lathers, Tone Silas, and Cynthia Johnson-Gordon), $100 each.
DECREE
For the reasons assigned, the judgment of the court of appeal is amended to reflect the following damage awards: Ella Mae Darrensbourg ($100), Colleen Lathers ($100), Tone Silas ($100), Cynthia Johnson-Gordon ($100), June Gross ($150), Dorothy Richard ($150), Lisa McKnight ($250), Martin Granier ($500), Lionel Harry ($500), Anne Ockmond ($500), James McCormick ($500), and Franklin McGinnis ($500). In all other respects, the judgment, as amended, is affirmed.
AMENDED AND AFFIRMED AS AMENDED.
JOHNSON and KNOLL, JJ., dissent and assign reasons.
VICTORY, J., concurs and assigns reasons.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. The parties initially selected thirty claimants. After trial, one claimant was dismissed for failure to comply with discovery, seven were dismissed for failure to appear at trial, and eight were found not to have been within the class boundaries during the relevant times.

. The trial court actually awarded damages to fourteen of the claimants remaining out of the original thirty claimants selected for trial. Subsequently, the court of appeal vacated the awards to two claimants, Debra Brown and Rogest Gross.

. As discussed in footnote 2, supra, the court of appeal unanimously vacated the awards to Debra Brown and Rogest Gross, finding no credible evidence to support their inclusion within the class. Although plaintiffs argue in their brief that the court of appeal erred in reversing the award to Debra Brown, they did not file an application seeking relief in this court. Accordingly, the portion of the court of appeal’s judgment vacating the awards to these two claimants is now final.

. Plaintiffs call our attention to In re New Orleans Train Car Leakage Fire Litigation, 00-1919 (La.App. 4 Cir. 4/20/05), 903 So.2d 9, writ denied, 05-1297 (La.2/3/06), 922 So.2d 1171, in which the individual plaintiffs were awarded from $5,000 to $15,000 for physical damages, and from $2,000 to $5,000 for mental anguish. However, a review of the Train Car Leakage opinion reveals that case is factually distinguishable. The chemical release in Train Car Leakage took place over a period of three days and involved a potential carcinogen. The plaintiffs residing in the area of the release were forced to evacuate, and were displaced from their homes. Some of the plaintiffs sought medical treatment, and others experienced mental and physical symptoms which lasted as long as several months. These facts stand in clear contrast to the instant case, where the chemical release was limited in duration. Unlike Train Car Leakage, none of the claimants in the case at bar were displaced from their homes. They did not seek medical treatment and only experienced relatively minor effects as a result of the release. Under these circumstances, we do *1257 not believe Train Car Leakage provides any useful guidance in determining the appropriate measure of damages.

. The court awarded $0 to three claimants who failed to appear at trial.