EDWIN A. LOMBARD, Judge.
This is a consolidated appeal of a judgment awarding damages to 49 out of 50 class members involved in a toxic tort action concerning injuries suffered while working at the Plaza Tower office building between 1996 and 2002. The appellees are part of the second flight of class members comprised of State employees who allege that while working in the Plaza Tower office building they were exposed to mold. The class is made up of Department of Health and Hospitals (DHH) and Department of Social Services (DSS) employees, who suffered a variety of health issues due to their exposure to mold and mold byproducts. Finding that the trial court did not err in awarding damages to the appel-lees, we affirm the judgment of the trial court.
*403 Relevant Facts and Procedural History
On October 25, 2001, the five class representatives in this case, Sherry Watters, Gina Recasner, Wendy Lemuix, Frances Breyne, and Gretchen Wiltz, filed a class action suit naming as defendants, the owners of the Plaza Tower office building, the management company for the building, the building’s insurers, and their own employer, the State of Louisiana. In their petition, the class representatives allege personal injuries through their exposure to toxic mold in the Plaza Tower, located at 1001 Howard Avenue in New Orleans. Particularly, they allege that they suffered inter alia, headaches, respiratory infections, sore throats, body aches, flu-like symptoms, itching, and increases in allergy reactions caused by their exposure to mold, mold spores, and mold by-products during their occupancy of the Plaza Tower as State employees from September 1996 to February 2002. After a class was certified and the certification was affirmed on appeal following a challenge by the State, the trial court conducted a seven-day bench trial in November 2007 to determine the common issues for the class and damages for the five class representatives.
By the end of 2009, it was established that on behalf of a class of State employees who worked in the Plaza Tower between 1996 and 2002 that: (1) the Plaza Tower was infested with harmful mold, particularly Stachybotrys, related to deplorable building conditions; (2) the State had breached its duty to its employees by requiring them to work in a building with such conditions; (3) that Stachybotrys mold can cause a variety of symptoms including respiratory symptoms, nasal irritation, sinus discomfort, watery eyes, throat discomfort, coughing, nasal symptoms, runny, blocked, or stuffy nose, headaches, itchy skin, weak voice, swallowing problems, and other related issues; and (4) the State is liable for 35% of the damages suffered by the appellees. See Watters v. Department of Social Services, 11-1174 (La.App. 4 Cir. 3/14/12) 102 So.3d 118, writ denied, 12-1146 (La.9/14/12), 99 So.3d 42.
Following these rulings, the State insisted and repeatedly requested that each individual class member prove at trial that he or she suffered harm because of the exposure to mold. However, because of the logistical issues of trying over 600 individual claims, the parties decided to try the damage claims in flights.
At a status conference after the first flight of class members’ damage claims were presented at trial, the trial court stated that it intended to appoint an expert to assist it with the grouping of the damages. After the conference, each party was allowed to submit nominations and brief any relevant issues regarding the appointment of such an expert. On January 27, 2011, the trial court issued an order appointing Bryan Jefferson to “create a methodology that allows for the grouping of claims that includes a quantum for each group to ensure a timely resolution of this matter and to submit a report to this Court and all parties detailing such methodology” and required him to be subject to cross-examination at trial.
On March 21, 2011, the State filed a writ application -with this court challenging the trial court’s authority to, inter alia, order its appointed expert to attend depositions and to recommend a quantum while grouping the claims of class members. The State’s writ application was denied.
On June 21, 2011, the trial court heard the individual issues for the appellees[1], a *404 second flight of fifty (50) class members. To assist the court in preparation for that trial, Mr. Jefferson reviewed the depositions of the fifty (50) class members, their medical records, and relevant decisions by the trial court and this court related to this case. Mr. Jefferson then issued an initial report in which he provided recommendations as to how to group the class members based on the trial court’s decisions concerning the previous fifty-five (55) class members. The parties then deposed Mr. Jefferson, after which he issued a supplemental report based on issues raised by the parties at the deposition.
At trial, the appellees introduced into evidence the depositions of the class members, the proof of loss forms, and the medical records that Mr. Jefferson had reviewed in preparing for his reports, as well as his reports. Further, Mr. Jefferson testified about his reports and recommendations, with each party permitted to cross-examine him. The court then took the case under advisement, and issued a judgment on September 18, 2011, awarding damages to 49 of the 50 class members whose claims had been tried.[2]
The appellees then filed a motion for new trial as to five (5) of the fifty (50) class members. While a decision on that motion was pending, the State appealed the September 2011 Judgment as to the remaining forty-five (45) members. On February 8, 2012, the trial court denied the appellees’ motion for new trial. On February 22, 2012, the State appealed the decision as to the remaining five (5) class members. These two appeals were then consolidated, and the State timely filed its appellant brief on July 23, 2012.
Discussion
The State assigns as error: (1) the trial court improperly permitted Bryan Jefferson to offer opinion testimony, improperly admitted his report into evidence and improperly relied on Bryan Jefferson’s opinion testimony and report as the basis for its general awards to the plaintiffs; (2) the trial court improperly awarded damages to the plaintiffs based on Bryan Jefferson’s erroneous interpretations of the law; (3) the trial court improperly awarded damages to the plaintiffs based on Bryan Jefferson’s “totality of the circumstances” test; and (4) the trial court erred in finding that the plaintiffs met their burdens of proof without testimony from a medical expert to establish specific causation.
Factual determinations are subject to the manifestly erroneous standard of review. Stobart v. State through Dept. of Trans. And Development, 617 So.2d 880 (La.1993). “Louisiana’s three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as well as the trial court’s normal procedure of evaluating live witnesses), great deference is accorded to the trial court’s factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court’s judgment.” Vir *405 gil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987).
As stated by this court in Ladner v. Government Employees’ Ins. Co., 08-0323, p. 5 (La.App. 4 Cir. 10/8/08), 992 So.2d 1098, 1101-02.:
The trier of fact may also choose to reject all of the testimony of any witness or may believe and accept any part or parts of a witness’ testimony and refuse to accept any other part or parts thereof. Temple v. Schwegmann Giant Super Markets, 95-2491, pp. 4-5 (La.App. 4 Cir. 7/10/96), 677 So.2d 1103, 1105-1106. Further, the trial court is permitted to make credibility determinations from deposition testimony just as from live testimony, and an appellate court views those determinations using the manifest error standard. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Maldonado v. Louisiana Superdome Com’n, 95-2490, p. 5 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087, 1091
Further, the trial court, as the trier of fact, has great and vast discretion with respect to the determination of damage awards. La. Civ.Code art. 2324.1; Howard v. Union Carbide Corp., 09-2750 (La.10/19/10), 50 So.3d 1251. Thus, it is only after an articulated analysis of the facts discloses an abuse of discretion may an appellate court disturb a damages award. Miller v. LAMMICO, 07-1352, p. 28 (La.1/16/08), 973 So.2d 693, 711.
Since the first three assignments of error asserted by the State regard the appointment and reliance on expert Bryan Jefferson, we will address them together. The State argues that the trial court improperly permitted Bryan Jefferson to offer opinion testimony, improperly admitted his report into evidence, and improperly relied on Bryan Jefferson’s opinion testimony and report as the basis for its general damage awards to the plaintiffs based on Mr. Jefferson’s erroneous interpretations of the law and “totality of the circumstances” test. Specifically, the State avers that the trial court failed to recognize the limitations of La.Code Evid. art. 706 experts.
Pursuant to Louisiana Code of Evidence article 706,[3] it was within the trial court’s discretion to appoint Mr. Jefferson as an expert to assist her with grouping claims and providing recommendations as to quantum, as stated in this court’s disposition denying the State’s writ application, which, in pertinent part, states:
The trial court’s judgment appointing an expert to assist it in managing the remaining class members’ claims falls within the discretion allowed by La. C.E. art. 706. The trial court appointed an expert to create a methodology to group claims, including quantum, and to submit a report to the Court and the parties detailing the methodology. This was done to ensure a timely resolution of the *406 matter. The expert will be subject to cross-examination by the parties. We do not find that this confers on the expert judicial or fact-finding functions. Adams v. CSX Railroads, 2004-1965 (La.App. 4 Cir. 5/4/05), 904 So.2d 13. Therefore, we deny the writ as to the appointment of the expert.
A review of the record reveals that Mr. Jefferson properly carried out his role as the trial court’s appointed expert in creating a methodology to group claims. The record indicates that Mr. Jefferson’s report and recommendations were made after the review of the record in the common-issues trial, the class members’ depositions and their relevant medical records as well as on the previous decisions made by the trial court and this court in this case. After being deposed, Mr. Jefferson submitted a supplemental and amending expert report and recommendations to address queries from both parties regarding findings memorialized in the original report. At trial, he was subject to cross-examination as to both his original and supplemental reports and recommendations.
At the June 21, 2011 hearing, the trial court recognized the limitations of court-appointed experts, which is evident when it stated:
The Fourth Circuit did approve the creation of methodology to determine the quantum. Now, at the end of the day, I’m going to determine these numbers. And, again, we all know that the Fourth Circuit said we could have an expert to assist us. I understand that and I’ve already done it, and I gave him the template. So, that’s going to be denied as well.”
* * *
And I want the record to be clear that the expert is court appointed to assist the Court in managing this trial.... I cannot hear 800 trials, and the Court did do originally I think roughly 50 of them to get an idea of what was going on so that the expert could do it. At the end of the day, I will make the decision .... So, I just want to make that clear that this is a court-appointed expert. He is here to assist the plaintiff as well as the defense. He has to answer to both, and however he can come up with the information to help this Court out, he has to work with you. [Emphasis added].
Thus, as the trial court clearly stated that the expert, Mr. Jefferson, would not engage in judicial functions nor be a trier of fact, we find that the trial court (1) did not manifestly err in appointing Mr. Jefferson to assist in the adjudication of the trial by creating a methodology to determine the quantum or in admitting his report into evidence; and (2) did not abuse its discretion in its awards of damages to the plaintiffs. Accordingly, we find that the State’s argument has no merit.
In its appeal, the State also argues that the trial court manifestly erred in finding that any of the appellees suffered physical symptoms related to the Plaza Tower mold, claiming that the appellees failed to introduce medical evidence to establish specific causation.
In Watters v. Dept. of Social Services, 11-1174 (La.App. 4 Cir. 3/14/12), 102 So.3d 118, the State asserted the same assignment of error stating that “[t]he Appellees failed to prove specific causation because they did not introduce medical evidence linking their particular injuries to mold exposure at the Plaza Tower.” This court rejected this argument, stating:
The State’s assertions that the Appellees failed to introduce medical evidence is erroneous. As stated by the district court, to request medical expert testimo *407 ny and a medical report form each individual would void the purpose of class actions. The class representatives of this class action provided a medical expert’s testimony. This medical expert provided concrete findings and reasoning for her determination that the symptoms of the class representatives were related to the mold found in the Plaza Tower. This finding of specific causation by the class representatives is significant of the remaining class members. It is clear that Louisiana law does not require medical expert examination of each class member’s symptoms before the court can find that specific causation has been met. As in Howard v. Union Carbide Corp., 09-2750, pp. 3-4 (La.10/19/10), 50 So.3d 1251, 1254-1255, the Fifth Circuit Court of Appeal and the Supreme Court affirmed the district court’s findings that the class members had met their burden of proving causation without any evidence that a medical expert examined each one of the class members. In fact, the record in Howard showed that not all the class members sought medical treatment for their symptoms. Id. Thus, the distribution of the damage awards in this matter was without error.
Id. at 125-26. (footnote omitted).
In the earlier case, Watters v. Dept. of Social Services, 08-0977 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, we analyzed all the facts and evidence presented at trial and the findings of the district court, concluding that the class members had sufficiently proved general causation. Id., pp. 25-26, 15 So.3d at 1147-1148. Specifically, we found that symptoms such as wheezing, coughing, runny nose, headaches, itchy skin, weak voice, swallowing problems, etc., were consistent with the effects of mold exposure. In this case, the appellees’ production of their proof of loss forms is admissible under La.Code of Evid. art. 803(4) and 803(5) along with their testimony that they have experienced the same symptoms as presented by the other class members. Further, medical evidence as presented in the earlier case is sufficient to establish by a preponderance of the evidence that the appellees suffered damages because of their exposure to mold. Thus, the State’s argument is without merit. After a review of the record, we do not find that the trial court manifestly erred in its findings.
Conclusion
Accordingly, for the reasons stated herein, the judgment of the trial court is affirmed.
AFFIRMED

. Anthony Bader, Mirtha Bell, Dawn Bently, Valerie Bergeron-Vedor, Mary Bonaparte, Nicole Bouie, Arnold Burks, Cornelia Cager-Bonds, Elaine Carter, Kim Marie Davis Che- *404 neau, Brenda Clark, Joan Clayton, Donna Luise Cohen, Althea Davis, Lizzie Dempsey, Donna Downy, Yolanda Evans, Audrey Feru-son, Ursula Forstall, Katherine Franklin, Bob-bette Gaines, Cheryl Franklin, Robin Green, Joycelyn Haynes, Betty Johnson, Mary Jones, Julia Lewis, Carol Mackey, JoAnn Medice, Sigrid Petit, Tanya Soublet, Patricia Thompson, Barbara Tregre, Mary Young, Beatrice Dorsey, Curtis Fisher, Jr., Wanda Gaines, Sandra Cook, Bobby Gross, Cynthia Brown, Catherine Carter, Michelle Davis, Alfreda Fields, Mary Gaines, Chiquita Jones, JoAnn Roy-Busch, Angela Batiste-Bridges, Paulette E. Brown, and Brenda Griffin.

. The trial court re-opened the claim of remaining class member — Brenda Griffin.

. Louisiana Code of Evidence Article 706 provides, in pertinent part:
A. Civil Cases. In a civil case, the court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party.