STEPHEN J. WINDHORST, Judge.
| ^Appellant, Raymond Jones appeals the trial court’s judgment which awarded $75,000.00 in general damages, subject to an 80% reduction for his fault in the cause of the accident. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On February 5, 2008, Mardi Gras Day, at approximately 5:00 P.M., Mr. Jones stepped from the neutral ground into the left-lane of the eastbound side of Veterans Memorial Boulevard (“Veterans”) and was struck by a marked police unit owned by the Jefferson Parish Sheriffs Office and operated by Deputy Gregory Joerger. Deputy Joerger was driving westbound on the eastbound side of Veterans, in the lane closest to the neutral ground.
Newell Normand, in his capacity as Sheriff of Jefferson Parish, filed suit against Mr. Jones for damages to the Sheriffs vehicle related to the accident. Mr. Jones filed an Answer and Reconven-tional Demand against Sheriff Normand alleging that Deputy Joerger and Sheriff Normand were liable for the accident and subsequent damages Mr. Jones sustained.
After a bench trial, the trial court rendered judgment in favor of Mr. Jones and against Sheriff Normand, in the amount of $75,000.00 in general damages, |3$50,077.82 in medical expenses and $7,200.00 for lost wages with legal interest from the date of judicial demand. The trial court found Mr. Jones’ recovery would be reduced by 80% for his fault. Mr. Jones filed this appeal alleging that the trial court erred in assessing him with 80% fault, and that the award of general damages was inadequate.
STANDARD OF REVIEW:
The factual findings of a trier of fact may not be disturbed by an appellate court absent manifest error. Arabie v. CITGO Petroleum Corp., 2010-2605 (La.3/13/12), 89 So.3d 307, 312, citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). Allocation of fault between comparatively negligent parties is a finding of fact. Sims v. State Farm Auto. Ins. Co., 98-1613, (La.3/2/99), 731 So.2d *3 197, 199. An appellate court must find, from review of the entire record, that there is a reasonable factual basis for the findings of the trier of fact, and must determine that the record shows the findings of fact are not manifestly erroneous or clearly wrong. Arabie, 89 So.3d at 312, citing Arceneaux, 365 So.2d at 1333; see also Stobart v. State, Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993). If the findings of the trier of fact are reasonable, when the record is reviewed in its entirety, an appellate court may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990); Marange v. Custom Metal Fabricators, Inc., 2011-2678 (La.7/2/12), 93 So.3d 1253, 1259. When there are two permissible views of the evidence, the findings of the trier of fact cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883; Rosell, 549 So.2d at 844.
The issue to be determined is not whether the finder of fact was right or wrong, but whether the trier of fact’s conclusion was reasonable. Stobart, 617 So.2d at 882; Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler, 558 So.2d at 1112. A |4trier of fact’s reasonable evaluations of credibility and inferences of fact should not be reversed, even if the appellate court sitting as the fact finder would have weighed the evidence differently. Rosell, 549 So.2d at 844. The reviewing court must be mindful that the trial court is in a better position in witnessing the entire trial, evaluating the credibility of witnesses, and in reviewing first hand all the evidence. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607, 610-611; Stobart, 617 So.2d at 883.
ALLOCATION OF FAULT:
In his first assignment of error, Mr. Jones alleged that the trial court erred in allocating 80% of the fault to him.
The following facts were adduced at trial. Mr. Jones arrived at the parade route between 12:00 P.M. and 1:00 P.M. He ate two to four sandwiches, chips, consumed six to eight beers, and watched the parade. He testified that even though he consumed six to eight beers while at the parade, he was alert, his speech was not slurred, his judgment was not impaired, and he was not intoxicated.
Immediately prior to the incident, Mr. Jones left his spot along the parade route and crossed to the neutral ground in an attempt to cross Veterans to purchase cigarettes. He walked over to the eastbound side of Veterans. He looked to the right and saw that traffic was stopped at the traffic light. Without looking to the left, Mr. Jones stepped off the neutral ground between two parked cars and onto the street, which is ordinarily one-way. He was struck by Deputy Joerger’s vehicle, headed westbound in the eastbound lanes. He testified that while walking from the neutral ground to the curb he did not observe any emergency or flashing lights nor did he hear a siren to warn him that Deputy Joerger’s vehicle was approaching.
When confronted with medical records in evidence, Mr. Jones could not confirm or deny whether he consented to take an ETOH (alcohol) test that was | .^administered once he arrived at the hospital. Mr. Jones was shown JPSO Exhibit 4, a serum drug screen which showed his blood alcohol level was .258% alcohol. Despite his extremely high level of alcohol, Mr. Jones continued to assert that he was alert and not impaired. Upon further examination, Mr. Jones admitted that he also had marijuana in his system.
Earlier that day, prior to his arrival at the parade route, Mr. Jones went to a daiquiri shop. Detective Wayland Shepard stated that while working the parade *4 route he went to the same daiquiri shop and was immediately directed to Mr. Jones. Detective Shepard testified that Mr. Jones appeared to be under the influence of alcohol, smelled of alcohol, and his speech was slurred. He asked Mr. Jones where he lived, and ordered him to leave the parade route and not return, or be arrested for public intoxication. Mr. Jones left the daiquiri shop without incident.
Detective Shepard further testified that while he did not witness the accident, when he arrived on the scene immediately after the accident, he recognized Mr. Jones from the incident earlier in the day at the daiquiri shop, and reported the earlier incident to his supervisor. At trial, Mr. Jones stated that he did not recall going to any daiquiri shops prior to his arrival at the parade route.
Deputy Joerger and his partner, Sergeant Chad Deer, were assigned to the Aurora and Veterans area on Mardi Gras Day. It is usually a “younger crowd” and more prone to “a lot of fights.” Prior to the accident in which Mr. Jones was injured, and on request from his supervisor, Deputy Joerger picked up a female and child and took them to the end of the parade route. His partner, Sergeant Deer, stayed at the assigned location.
After dropping off the female and child, Deputy Joerger testified that he was advised to go back to his post because several fights were breaking out and his partner was alone. He testified that the safety of his partner was his primary | (¡concern. The only available way to return to his post was to travel westbound in the eastbound lanes of Veterans, and he stated that he followed the Jefferson Parish Sheriffs Office procedure for traveling against the flow of traffic for emergencies, which was routinely used during Mardi Gras parades. He proceeded westbound in the eastbound lane, closest to the neutral ground, traveling 15-20 miles per hour with his fights on and used his “yelp” button, although not continuously. The procedure did not require an officer to have his siren on continuously.
The accident occurred close to the intersection of East William David Dr. and Veterans. As Deputy Joerger approached the first parked vehicle, Mr. Jones darted out from between two parked cars located in the turn lane. Mr. Jones struck the front right corner of the police vehicle. Deputy Joerger testified that Mr. Jones appeared to be unbalanced and he stumbled head first when he came across the road in between the two legally parked vehicles. Deputy Joerger stated that there was nothing to prevent Mr. Jones from seeing all of his emergency fights. However, he conceded that it was possible that Mr. Jones did not hear the “yelp” because of the noise in the area.
After impact, Deputy Joerger immediately got out of the vehicle to check on Mr. Jones, called for emergency services, notified his supervisor, and waited for help to arrive. Deputy Joerger did not dispute that the accident report indicated that a cause of the accident was the fact that he was traveling against the flow of traffic.
Chief Deputy Craig Taffaro testified that he has been with the department for 39 years and has a total of 43 years with law enforcement. He is directly below Sheriff Normand in the chain of command and is in charge of all field operations and management of Mardi Gras. He testified that the policy and procedure used to allow emergency vehicles to travel against the flow of traffic had been in place for the last thirty years. In order to travel against the flow of traffic, the policy required [ 7that an officer utilize his overhead lights and other emergency fights. Officers are also required to use their sirens, although they are not required to be continuously *5 on, and must travel at a reasonably safe speed. The procedure does not require travel in a specific lane. Counsel for Mr. Jones stipulated that Deputy Joerger followed the department’s policies and procedures, but not that he traveled in the correct lane.
It was stipulated that Donna Lucas would testify that she was walking the same path as Mr. Jones and that she observed the approaching emergency lights. It was further stipulated that Major Kerry Najolia, the Training Academy Director for the Jefferson Parish Sheriffs Office, would testify that Deputy Joerger was in compliance with the procedure used by the Jefferson Parish Sheriffs Office, and that the procedure was “reasonable and safe.” The parties additionally stipulated that Earl Morris, an expert from Utah, would testify that the procedure used by the Jefferson Parish Sheriffs Office is used throughout the country for other parades and is “reasonable and safe.”
Considering the foregoing, we find no error in the trial court’s decision allocating 80% of the fault to Mr. Jones and 20% of the fault to Deputy Joerger. The record clearly supports finding that Mr. Jones was intoxicated at the time of the accident and his intoxication impaired or affected his judgment. Mr. Jones was removed from the parade route for public intoxication prior to the accident. According to Detective Shepard, Mr. Jones appeared to be under the influence, smelled of alcohol, and his speech was slurred. Mr. Jones’ serum drug screen, taken after the accident, showed that Mr. Jones’ blood alcohol level was .258% alcohol. Mr. Jones also had marijuana in his system. Deputy Joerger testified that as he approached the first parked vehicle, Mr. Jones darted out between two parked vehicles, appeared to be unbalanced, and he stumbled head first across the roadway. |8We find that the trial court was not manifestly erroneous in concluding that Mr. Jones was too intoxicated to be aware of his surroundings and that the accident was caused primarily by his negligence.
The record also supports a finding that Deputy Joerger was negligent in the cause of the accident. The policy and procedure utilized during parades was authorized by La. R.S. 32:24 which allows emergency personnel to travel against the flow of traffic, if responding to an emergency. The record reveals that while Deputy Joerger followed the procedure required to travel against the flow of traffic, he was not responding to an emergency. Deputy Joerger was returning to his post to assist his partner, for safety reasons.
We find no merit in this assignment of error.
QUANTUM:
In his second assignment of error, Mr. Jones alleged that the trial court erred in awarding an insufficient amount for general damages.
In awarding general damages, the trier of fact is afforded great discretion. La. C.C. art. 2324.1; Howard v. Union Carbide Corp., 08-750 (La.App. 5 Cir. 10/27/09), 21 So.3d 1084, 1087; writ granted, 09-2750 (La.4/23/10), 32 So.3d 808, and aff'd as amended, 09-2750 (La.10/19/10), 50 So.3d 1251, citing Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). An appellate court may only disturb a general damages award after an articulated examination of the facts discloses an abuse of discretion. Miller v. LAMMICO, 07-1352 (La.1/16/08), 973 So.2d 693, 711. In Howard, supra at 1087, the Supreme Court, citing language from the Fifth Circuit explained:
[t]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the *6 measure of 19general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Here, Mr. Jones suffered from a subdural hematoma, headaches, a compression fracture of the T-12 vertebrae and left shoulder pain as a result of the accident. Mr. Jones’ subdural hematoma, while it is a serious medical condition, resolved within a couple of months. He underwent a kyphoplasty surgery on his back and received physical therapy and a TENS unit for his back. The medical records and testimony show that Mr. Jones treated for the majority of his injuries in the first couple of months after his accident and had no treatment from August through December 2008. In 2009 and 2010, he received treatment for his injuries on five occasions. Mr. Jones’ medical records indicate one date for physical therapy in 2009. He did not receive treatment for any of his injuries in 2011.
The trial court awarded Mr. Jones $75,000.00 in general damages for his injuries subject to an 80% reduction for his percentage of fault, as discussed above. Based on the record and evidence, we do not find that the trial court abused its discretion in this award of general damages and therefore, this assignment of error is without merit.
CONCLUSION
For the above discussed reasons, the judgment of the trial court is affirmed. Costs are assessed against appellant.
AFFIRMED