NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-136

GORDON TATMAN

VERSUS

MARVIN WILLIAMS, VALLEY PROTEINS, INC. AND TRAVELERS
INDEMNITY INSURANCE COMPANY

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-C-4006-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of D. Kent Savoie, Van H. Kyzar, and Sharon Darville Wilson,
Judges.

AFFIRMED.

**Pride J. Doran**
**Quincy L. Cawthorne**
**Adrian P. Smith**
**DORAN & CAWTHORNE, P.L.L.C.**
**Post Office Box 2119**
**Opelousas, Louisiana 70571**
**(337) 948-8008**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Gordon Tatman**

**Thear J. Lemoine**
**John J. Elmer, Jr.**
**BROWN SIMS, P.C.**
**365 Canal Street, 29th Floor**
**New Orleans, Louisiana 70163**
**(504) 569-1007**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Travelers Indemnity Insurance Company**
     **Marvin Williams**
     **Valley Proteins, Inc.**

**WILSON, Judge.**

Plaintiff, Gordon Tatman, appeals the judgment of the trial court finding defendants, Marvin Williams, Valley Proteins, Inc., and Travelers Indemnity Insurance Company, solely at fault for his injuries following an automobile accident, but awarding him only $65,000 in general damages and denying all future medical expenses. For the reasons expressed below, we affirm the judgment of the trial court.

## I.

## ISSUES

In this appeal we must decide:

(1) whether the trial court erred in denying Appellant, Gordon Tatman, an award for future medical treatment, based solely on its finding that Gordon Tatman was not a credible witness, and not on the record as a whole; and

(2) whether the trial court erred in awarding Appellant, Gordon Tatman, only $65,000 for general damages and $0.00 for future medical treatment.

## II.

## FACTS AND PROCEDURAL HISTORY

On September 11, 2017, Mr. Tatman was a passenger in a Honda Civic driven by his friend, David Papillion. Marvin Williams was the operator of a large commercial truck as a part of his employment with Valley Proteins, Inc. and was insured by Travelers Indemnity Insurance Company. While crossing Louisiana Highway 10 to merge onto Interstate 49, Mr. Williams failed to yield at a stop sign and collided with the Honda Civic, causing personal injuries to Mr. Tatman.

After the accident, Mr. Tatman sought treatment from Metropolitan Health Group (Metro) on September 12, 2017, and reported a history of prior lower back pain. Mr. Tatman continued receiving treatment from Metro throughout

September. On September 26, 2017, Mr. Tatman rear-ended a vehicle after leaving a physical therapy session at Metro. At some other point in the month, a police car rammed Mr. Tatman's vehicle.

Mr. Tatman began seeing an orthopedic surgeon, Dr. George Raymond Williams, on September 28, 2017, where he denied having any preexisting musculoskeletal afflictions. Mr. Tatman underwent an MRI of his lumbar and cervical spine on October 12, 2017. The lumbar MRI revealed posterior disc bulges at the L2-3, L3-4, L4-5, L5-S1 levels of the spine, with bilateral foraminal stenosis at the L3-4 and L5-S1. The cervical MRI revealed severe foraminal stenosis at the C2-3 levels of the spine, mild stenosis at the C5-6 level, and mild to moderate foraminal stenosis at the C7-T1. On December 5, 2017, Mr. Tatman underwent MRIs on his left shoulder, left knee and right ankle.

On January 29, 2018, Mr. Tatman began seeing Dr. Steven Wyble for pain management. At a June 21, 2018 visit, Mr. Tatman tested positive for benzodiazepines, opiates, oxycodone, and marijuana on a drug screen. On July 2, 2018, Mr. Tatman started physical therapy at Recovery ChiroMed. He attended a total of eleven visits before discontinuing treatment on September 5, 2018. On August 29, 2018, Mr. Tatman filed his petition for damages naming the driver, Marvin Williams, his employer, and their insurer as defendants.

In September 2018, Mr. Tatman was incarcerated and remained in custody until June 2019. While incarcerated, Mr. Tatman continued to treat with Dr. Williams on February 7, 2019, March 25, 2019, and May 14, 2019. On September 16, 2019, Mr. Tatman presented to Dr. Joseph Gillespie for pain management and had a second visit with him on October 14, 2019. On October 30, 2019, a neurosurgeon, Dr. Najeeb Thomas, performed an independent medical examination

2

of Mr. Tatman in which Mr. Tatman gave him a history. Dr. Thomas conducted a physical examination and reviewed his prior MRIs.

On November 24, 2019, Mr. Tatman was hospitalized and described as homicidal with paranoid delusions. He was brought to the hospital under an involuntary outpatient commitment for a history of bipolar disorder, schizophrenia, suicidal thoughts, and danger to others. He also tested positive for phencyclidine (PCP), cannabinoids, and benzodiazepines. On December 3, 2019, Mr. Tatman returned to Metro for a single isolated visit. From this date until April 26, 2022, there was no documented medical treatment. During this period, Mr. Tatman was again incarcerated. While incarcerated, Mr. Tatman wrote a letter to Judge Caswell indicating he suffered from a drug problem and had been in four physical altercations.

On April 26, 2022, Dr. Williams's office recommended that Mr. Tatman go back to physical therapy and pain management and that he would consider repeat MRIs of the cervical spine, lumbar spine, and left knee if they failed. On June 14, 2022, after attending two physical therapy sessions, Dr. Williams recommended Mr. Tatman undergo a robotic surgery and new MRIs would be necessary.

Trial commenced on July 25, 2022. The trial court was presented with the deposition testimony of Dr. Williams and Dr. Thomas and heard live testimony from David Papillion, Mr. Tatman, and Mr. Tatman's mother. Trial concluded on July 26, 2022. On September 26, 2022, the trial court signed reasons for judgment and a final judgment was rendered on November 22, 2022. In its reasons for judgment, the trial court noted that due to Mr. Tatman's "numerous credibility issues, the court finds he failed to prove the need for any future medical treatment. Thus, the court does not award any future medical expenses." The trial court ruled

in favor of Mr. Tatman and against defendants awarding him $19,234.20 for past medical expenses and $65,000 for general damages. Mr. Tatman now appeals.

III.

## STANDARD OF REVIEW

On appeal, Mr. Tatman contends that the trial court erred in denying him any future medical expenses and only awarding $65,000 in general damages. Future medical expenses are items of special damages. *Armentor v. Safeway Ins. Co.*, 07-805 (La.App. 3 Cir. 12/19/07), 972 So.2d 444. It is well settled that a factfinder is afforded great discretion in its determination of both general and special damages and a reviewing court will not set aside such awards in the absence of manifest error. *Baack v. McIntosh*, 20-1054 (La. 6/30/21), 333 So.3d 1206. Moreover, when the findings are based on credibility determinations, the manifest error standard demands that great deference be given to the trier of fact's findings because only the fact finder can be aware of the variations in demeanor and tone of voice which weigh heavily on the listeners belief in what is said by the witness. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

IV.

## LAW AND DISCUSSION

**Future Medical Expenses**

In his first assignment of error, Mr. Tatman contends that the trial court erred in denying him an award for future medical treatment, based solely on its finding that he was not a credible witness, and not on the record as a whole. We disagree with Mr. Tatman's contention. Mr. Tatman specifically points to the trial court's written reasons for judgment wherein it states, "Due to Tatman's numerous credibility issues, the court finds he failed to prove the need for any future medical treatment. Thus, the court does not award any future medical expenses."

4

We first note that the trial court's written reasons for judgment form no part of the judgment and appellate courts review judgments, not reasons for judgment. *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 4/1/11), 61 So.3d 507. Judgments may be upheld on appeal for reasons different than those assigned by the trial court as "written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed[.]" *Id.* at 572. The judgment states, "[A]ll other claims and causes of action, including but not limited to those for future medical expenses, are denied and dismissed with prejudice." Mr. Tatman refers to the trial court's mention of his credibility issues in its decision to deny future medical expenses and concludes that the court relied on nothing else. The written reasons completely undermine this conclusion as the general damages section reads:

> The court finds that Tatman suffered injuries as a result of the accident. Drs. Williams and Thomas agree that, at a minimum Tatman suffered an aggravation of pre-existing conditions to his neck and back. The doctors disagree on the need for surgery. Tatman also suffered injuries in other parts of his body. However, with respect to all injuries, the court finds Tatman exaggerated both the severity and duration of his symptoms. Further, the court struggled with Tatman's credibility. Given Tatman's credibility issues, the court finds he did not prove the need for surgery.

Clearly the trial court did not base its decision solely on Mr. Tatman's credibility, but rather considered it along with the other evidence presented.

At trial, Mr. Tatman bore the burden of proving that he was entitled to an award for future medical expenses. To meet that burden, Mr. Tatman had to prove that future medical expenses would "more probably than not be incurred." *Menard v. Lafayette Ins. Co.*, 09-1869, p. 12 (La. 3/16/10), 31 So.3d 996, 1006. "A plaintiff shows the probability of future medical expenses with supporting medical testimony and estimations of their probable cost." *Id*. "Importantly, future medical

5

expenses must be established with some degree of certainty." *Id.* However, a court should not reject an award of future medical expenses when an exact value of such expenses is not offered if the record does establish that future medical expenses are necessary and inevitable. *Id.* Mr. Tatman had to establish by a preponderance of the evidence that future medical expenses would be "medically necessary." *Id.* An award of future medical expenses is "highly speculative and not susceptible to calculation with mathematical certainty." *Id.* Thus, such awards generally turn on questions of credibility and inferences of experts and witnesses. *Id.* A factfinder's assessment of future medical expenses is subject to great deference and an appellate court should rarely disturb an award on review. *Id.* A fact-finder's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. *Id.*

Mr. Tatman presented deposition testimony and medical records from his treating physician, Dr. Williams. Dr. Williams testified that in his opinion, future surgeries were necessary and offered estimates as to the expected costs of these procedures. In contrast, Dr. Thomas testified that Mr. Tatman had no objective signs of injury. As such, he was not a candidate for cervical or lumbar surgery because his pain complaints were inconsistent with the objective findings and surgery would not provide any functional benefit. The trial court was left to decide between two permissible views of the evidence.

Mr. Tatman urges that Dr. Williams' opinion, as his treating physician, should be given more weight than non-treating physician, Dr. Thomas. Mr. Tatman is correct that "[t]he general jurisprudential rule is that a treating physician's opinion is given more weight than a non-treating physician." *McCray v. Delta Indus., Inc.*, 00-1694, p. 8 (La.App. 1 Cir. 9/28/01), 809 So.2d 265, 272. However, "courts applying that doctrine have held that the treating physician's testimony is not

6

irrebuttable, as the trier-of-fact is required to weigh the testimony of all of the medical witnesses." *Longoria v. Brookshire Grocery Co.*, 37,975, p. 9 (La.App. 2 Cir. 12/19/03), 862 So.2d 1172, 1179, *writ denied*, 04-157 (La. 4/23/04), 870 So.2d 299. As Mr. Tatman also correctly pointed out, "the weight afforded a treating physician's testimony is largely dependent upon the physician's qualifications and the facts upon which his opinion is based." *Id*. "For an expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record." *Davis v. Sonnier*, 96-515, p. 16 (La.App. 3 Cir. 11/6/96), 682 So.2d 910, 919. "If the opinion is based upon facts not supported by the record, the opinion may be rejected." *Id.*

Unfortunately, Dr. Williams' opinions were primarily based on the report of Mr. Tatman. Dr. Williams testified that the only history he obtained on Mr. Tatman was taken directly from Mr. Tatman himself. He did not receive or review any of Mr. Tatman's prior medical records. Mr. Tatman denied having any "preexisting musculoskeletal afflictions" in his history to Dr. Williams. However, two weeks prior to this representation, Mr. Tatman reported that at the time of the subject accident, he still suffered lower back pain related to a 2012 incident for which he was still treated with pain management. In fact, Dr. Williams had treated Mr. Tatman for back injuries in 2013 but had forgotten this fact until confronted with the records during cross examination.

Dr. Williams testified that his recommendation for surgery was based on Mr. Tatman's MRIs, physical examination, and the failure of conservative care based on Mr. Tatman's continued reports of pain. As to the MRIs, Dr. Williams testified that all the findings he noted on the cervical and lumbar MRIs were degenerative and would have preexisted the accident. Although Dr. Williams recommended new MRIs be completed before scheduling surgery, he stated in

7

deposition that the surgical recommendation was based on the levels indicated in the original MRIs. Since these MRIs only indicated findings predating the accident, Dr. Williams' testimony failed to show that the surgery, if completed, was necessitated by the accident. Further, all of his medical recommendations were based on Mr. Tatman's continued complaints of pain. Dr. Williams testified that all of Mr. Tatman's symptoms were subjective, and he had to rely on Mr. Tatman telling him the truth to know anything about these subjective symptoms. A claimant's lack of credibility on factual issues can serve to diminish the veracity of his complaints to a physician. *Id.* After reviewing the record, the trial court had ample reason to find Mr. Tatman incredible.

The record is replete with various contradictions and blatant untruths told by Mr. Tatman. Mr. Tatman had a pattern of giving incorrect medical history to physicians both before and after the subject accident. His own counsel suggested that Mr. Tatman had drug-seeking behaviors and a history of addiction. When examined by the physicians, Mr. Tatman stated his symptoms manifested in a 360-degree pattern. Both Dr. Williams and Dr. Thomas testified that this did not make sense anatomically. Mr. Tatman stated that his pain was always ten out of ten, including while testifying in court, yet his pain did not stop him from participating in the trial, frequently turning to view exhibits. Therefore, it was more than reasonable for the trial court to find Mr. Tatman lacked credibility and his reports of pain were greatly exaggerated.

Given the trial court's correct determination that Mr. Tatman lacked credibility, the medical opinion of Dr. Williams relying solely on Mr. Tatman's report of his subjective symptoms was equally incredible. We find no manifest error in the trial court's finding that Mr. Tatman failed to prove the need for any future medical treatment. The judgment denying future medical expenses is affirmed.

## General Damages

In his next assignment of error, Mr. Tatman asserts that the trial court erred in its award for general damages and future medical treatment. As discussed above, the trial court reasonably determined that Mr. Tatman failed to prove a need for future medical treatment and declined to award any future medical expenses. As to the general damage award, the trial court awarded Mr. Tatman $65,000. Mr. Tatman contends that this amount is woefully inadequate to compensate for his pain and suffering. After reviewing the record, we disagree.

The Louisiana Supreme Court has set forth the standard of review for general damages as follows:

> General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms. *Duncan v. Kansas City Southern Railway Co.*, 00-0066, p. 13 (La. 10/30/00), 773 So.2d 670, 682. It is well-settled that vast discretion is accorded to the trier of fact in fixing general damage awards, as provided in La. C.C. art. 2324.1 ("In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury."). *Howard v. Union Carbide Corp.*, 09-2750, p. 5 (La. 10/19/10), 50 So.3d 1251, 1255. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Howard, 09-2750 at p. 5, 50 So.3d at 1255-56; *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La. 1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
>
> Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Howard*, 09-2750 at p. 5, 50 So.3d at 1256; *Youn*, 623 So.2d at 1260. The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Howard*, 09-2750 at p. 5, 50 So.3d at 1256; *Reck v. Stevens*, 373 So.2d 498, 504-05 (La. 1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior

awards appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Howard*, 09-2750 at pp. 5-6, 50 So.3d at 1256; *Coco v. Winston Industries, Inc.*, 341 So.2d 332, 335 (La. 1976).

*Jones v. Mkt. Basket Stores, Inc.*, 22-841, pp. 15–16 (La. 3/17/23), 359 So.3d 452, 464.

In *Pete v. Boland Marine & Manufacturing. Co., LLC*, 23-170 (La. 10/20/23), ___So.3d___(2023 WL 6937381), however, the supreme court recently addressed whether to allow consideration of prior awards in determining whether there has been an abuse of discretion. The supreme court held:

> The inherently subjective nature of the abuse of discretion standard in the context of reviewing general damage awards compels that some measure of objectivity be incorporated into the determination of an award's reasonableness, so that there is some standard for comparison. We now hold that an appellate court must consider relevant prior general damage awards as guidance in determining whether a trier of fact's award is an abuse of discretion.

*Id.* at ___.

Mr. Tatman's lack of credibility in this case presented some difficulty in determining a proper general damage award. The trial court found that at a minimum, Mr. Tatman suffered an aggravation of preexisting conditions to his neck and back. He also suffered injuries to other parts of his body. However, the trial court found that Mr. Tatman exaggerated both the severity and duration of his symptoms. As such, the trial court determined that the record supported a general damage award of $65,000. Given Mr. Tatman's credibility issues regarding his symptoms and considering prior general damage awards affirmed by this court, we cannot say that the trial court abused its vast discretion.

In *Laday v. Doe*, 10-1110 (La.App. 3 Cir. 3/16/11), 59 So.3d 516, the plaintiff, who suffers from paranoid schizophrenia, was injured when trapped by a

10

bus door. The trial court found that the incident caused or aggravated a disc herniation and future surgery was required. The plaintiff was awarded $60,000 in general damages. Although the injury in *Laday* required future surgery, unlike Mr. Tatman, this court determined that the $60,000 award was not an abuse of discretion.

In *Guillory v. Saucier*, 11-745 (La.App. 3 Cir. 12/7/11), 79 So.3d 1188, *writs denied*, 12-75, 12-81 (La. 3/9/12), 84 So.3d 554, 555, the plaintiff was injured when he was struck by a drunk driver. The plaintiff was found to have multi-level disc herniations and facet joint involvement producing his symptoms. The plaintiff underwent a number of lumbar epidural steroid injections, facet injections, and radio frequency ablation to alleviate his symptoms. The jury awarded the plaintiff $20,000 for pain and suffering and $10,000 for loss of enjoyment of life. This court considered that the plaintiff's pain was characterized as chronic, but also noted that the plaintiff's pain had consistently improved and he only experienced occasional discomfort by the time of trial. Given those circumstances, this court found no abuse of discretion and upheld the award. The plaintiff in *Guillory* underwent far more medical treatment than Mr. Tatman and yet only received $30,000 in general damages. Although Mr. Tatman never testified that his symptoms improved, as did the plaintiff in *Guillory*, the trial court determined that Mr. Tatman had exaggerated the severity and duration of his symptoms. Comparing the awards in the above cases with the specific circumstances of Mr. Tatman's case, we find no abuse of the trial court's vast discretion in its assessment of general damages. This assignment lacks merit.

V.

## **CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.

Costs of this appeal are assessed to plaintiff/appellant, Gordon Tatman.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.