Welch, J.
*208 This matter comes to us on transfer from the Louisiana Supreme Court for briefing, argument, and full opinion under this Court's supervisory jurisdiction.[1] See Aaron v. Exxon Mobil Corp. , 2018-0009 (La. 3/9/18), 237 So.3d 1184. This is a mass tort suit involving several consolidated lawsuits filed in Baton Rouge City Court ("city court") that were appealed to the Nineteenth Judicial District Court ("19th JDC"). The litigation arises out of a fire that occurred at the ExxonMobil, Corporation ("Exxon") refinery in Baton Rouge on August 2, 1993. This appeal involves six plaintiffs who proceeded to trial together ("trial plaintiffs"). The defendant, Exxon, appeals the city court's May 1, 2017 judgment after remand, finding that Exxon was 100% at fault and liable to the trial plaintiffs for damages.
For the reasons set forth more fully below, we find that the city court did not manifestly err in allocating 100% fault to Exxon after remand. We further find that the city court did not abuse its vast discretion in fixing the amount of general damages awarded. Accordingly, the writ application is denied; the judgment after remand is affirmed.
BACKGROUND
This case arises from a pipe failure and rupture that resulted in a fire at the Exxon refinery in Baton Rouge on August 2, 1993, at approximately 4:15 a.m. The fire *209 occurred in the East Coker Unit of the Exxon refinery-one of three coker units at the refinery-which converted high-sulfur, heavy crude oil into gasoline, diesel, and jet fuel. A carbon steel piping elbow that was a component part of the East Coker Unit ruptured, causing an explosion. Two minutes later, escaping hydrocarbon gases ignited, causing a fire. Six minutes later, a nearby flushing oil line ruptured, releasing additional fuel for the fire. Around 6:40 a.m., the main part of the fire was extinguished. Smaller fires, producing no visible smoke, continued to bum until around 8:30 a.m. Two Exxon employees died as a result of the explosion and fire.
The Exxon refinery is located on Scenic Highway in Baton Rouge, directly across the street from a densely populated residential community. During the two and a half hours the main fire burned, the fire produced a thick smoke plume, which moved in an easterly direction across the community adjacent to the facility. The explosion and fire also released ash and debris. The debris, including asbestos particles, was spewed from the East Coker Unit and scattered about the residential community located across the street from the refinery. The ash and debris landed on the people and property of the community.
Law enforcement and fire department personnel, other emergency agencies, and stakeholders in the community, as well as Exxon staff, merged into the affected area and surrounding properties with emergency vehicles and equipment. Exxon dispatched personnel to conduct air sampling both inside the facility and in the surrounding community during the time of the fire. Exxon also set up several fixed-station monitors that picked up trace amounts of hydrogen sulfide and carbon monoxide near the refinery's east gate. The only substance picked up at measurable levels was carbon particulate-smoke.
First responders clad in white "space type" protective jumpsuits inspected the community and retrieved contaminated debris and postulate matter in the atmosphere that had been scattered by the explosion and resulting fire. Residents were notified to "shelter in place" and turn off their air conditioning units and refrain from touching debris that had landed on and covered their property.
The East Coker Unit was designed, constructed, and inspected by Foster Wheeler Corporation ("Foster Wheeler") in 1962 and 1963. Following the completion of construction, Humble Oil and Refining Company ("Humble Oil"), Exxon's predecessor in interest, accepted the work and began operation of the East Coker Unit in 1963, which continued until its destruction by the fire on August 2, 1993.[2]
The East Coker Unit was a typical four drum coker unit that contained approximately forty-one miles of pipe and tubing and approximately ten thousand connecting elbows. The undisputed cause of the fire was the failure of a six-inch, forty-five degree carbon steel piping elbow in the pipe spool for Pump P-2A/B discharge piping, located in the East Coker Unit, which was installed as part of the unit's original construction, thirty years prior to the fire. According to Foster Wheeler's design specifications, the piping elbow that ruptured and caused the fire should have been manufactured of steel containing five percent chromium and one-half percent molybdenum. The chrome-moly material, unlike carbon steel, resists corrosion caused by the sulfur in heavy crude oil. Contrary *210 to its own design specifications, however, the piping elbow installed by Foster Wheeler was manufactured of carbon steel, a material more susceptible to corrosion than chrome-moly steel.
The piping in the East Coker Unit was installed by local pipe fitters subcontracted by Foster Wheeler. After installation, the piping circuit containing the incorrect carbon steel elbow was covered with asbestos insulation, and once covered, was hidden from visual inspection. The carbon steel elbow performed for thirty years, until it ruptured on August 2, 1993, causing the explosion and fire that destroyed the East Coker Unit.
PROCEDURAL HISTORY
Litigation resulting from the explosion and fire was brought in both federal and state courts. A putative class action was originally filed in the 19th JDC against Exxon and Foster Wheeler, which was removed to the United States District Court for the Middle District of Louisiana. The putative class members sought damages allegedly sustained as a result of the pipe rupture and resulting fire. In that same matter, Exxon asserted a third-party claim against Foster Wheeler based on Foster Wheeler's design and construction of the East Coker Unit.[3] Ultimately, the federal district court dismissed the plaintiffs' claims against Foster Wheeler and also dismissed Exxon's third-party claim against Foster Wheeler on the grounds of the ten-year peremptive period applicable to claims based on construction.[4] See La. R.S. 9:2772 (prior to its amendment by 1999 La. Acts No. 1024, § 1 (eff. Aug. 15, 1999) ). A companion suit was filed in the 19th JDC regarding Exxon's claims against Foster Wheeler, wherein the district court similarly dismissed Exxon's claims against Foster Wheeler on the grounds of the ten-year peremptive period applicable to claims based on construction.[5]
With Exxon as the sole remaining defendant, the federal district court denied class certification, and following a bench trial, rendered judgment in favor of Exxon and against the plaintiffs, holding that Exxon was not liable to the plaintiffs for their alleged injuries under either a strict liability theory or negligence theory.[6] The United States Court of Appeals for the Fifth Circuit affirmed.[7]
Baton Rouge City Court Litigation
On April 20, 2007-prior to the handing down of the aforementioned decision by the federal district court-approximately 8,500 plaintiffs who lived near the Exxon refinery at the time of the explosion and resulting fire filed three mass tort lawsuits against Exxon in city court, which are the *211 subject of the instant supervisory writ application. The first suit was filed by 4,172 plaintiffs against Exxon.[8] The second suit was filed by 2,939 plaintiffs against Exxon.[9] The third suit was filed on behalf of 1,450 minor plaintiffs against Exxon.[10] The plaintiffs alleged that Exxon was liable under theories of negligence pursuant to La. C.C. art. 2315[11] and strict liability pursuant to La. C.C. arts. 2317 and 2322[12] for all of their injuries and damages caused by the explosion and fire. The plaintiffs contended that they suffered damages including "personal injury, past and future pain and suffering, past and future medical expenses, mental anguish and emotional distress, damage to their homes and structures, diminution in the value of their property, other economic damages, loss of society and quality of life, loss of community[,] and other damages to be set forth and established" due to Exxon's negligence. The plaintiffs also alleged that the "explosion and fire caused the release of noxious and toxic chemicals, which permeated the atmosphere over the area adjacent to the Exxon refinery site and into the surrounding communities," which caused injuries to the plaintiffs including "considerable fear, mental anguish, uncertainty[,] and inconvenience of the populace of the communities surrounding the refinery site...." The city court consolidated the three suits and transferred the matter to Division D.[13] *212 On December 2 and 3, 2013, the city court conducted a trial on the claims of six plaintiffs out of the thousands who filed suit against Exxon.[14] The city court heard closing arguments on January 31, 2014. After closing arguments, the city court announced its ruling, holding that the trial plaintiffs proved their claims of negligence pursuant to La. C.C. art. 2315, and rendered judgment in favor of the trial plaintiffs, awarding damages as follows: (1) $7,500.00 to Gloria H. Poole; (2) $7,500.00 to Patricia A. Brue; (3) $7,500.00 to Dorothy J. Browder; (4) $4,000.00 to Barbara W. Burks; (5) $7,500.00 to Doris J. Vondo; and (6) $7,500.00 to D'Ann L. Scott. The city court further held that the trial plaintiffs failed to prove their claims of strict liability pursuant to La. C.C. arts. 2317 and 2322. On February 24, 2014, the city court signed a partial final judgment in accordance with its oral ruling.[15] The city court issued written reasons for judgment on March 14, 2014, which stated, in pertinent part:
The Court[,] having reviewed the exhibits and briefs and heard the evidence, finds that [Exxon] had a duty to maintain and operate the Baton Rouge refinery in a manner that would not endanger the health of the local residents. [Exxon] breached this duty. The Court also finds that [Exxon's] breach was the proximate cause of the Trial Plaintiff[s'] damages and that the Trial Plaintiffs were within the zone of danger. Accordingly, this Court finds [Exxon] liable to the Trial Plaintiffs for their claim[s] of negligence pursuant to La. Civ. Code Ann. Art. 2315. The Court also finds that the Trial Plaintiffs failed to prove their claims of strict liability pursuant to La. Civ. Code Ann. Art[s.] 2317 and 2322.
Appeals to the 19th JDC [16]
Exxon appealed from the portion of the city court's February 24, 2014 judgment finding Exxon negligent and awarding damages to the trial plaintiffs.[17] Exxon argued that the city court erred in failing to assign any fault to Foster Wheeler and in awarding excessive damages to the plaintiffs, who they argued suffered minor *213 symptoms or no symptoms at all and who never sought medical attention.
The trial plaintiffs also appealed from the portion of the city court's February 24, 2014 judgment finding that Exxon was not strictly liable.[18] The 19th JDC consolidated Exxon's appeal with the trial plaintiffs' appeal and transferred the matter to Section 25, Division O.
The 19th JDC held oral arguments on the appeals on November 10, 2014. The 19th JDC orally rendered judgment affirming the city court's judgment on December 10, 2014, and issued written reasons on January 7, 2015, which stated, in pertinent part:
Whereupon , the Court found that the City Court, the trial court in this matter, did not abuse [its] discretion. For these reasons[,] the Court affirmed the judgment from Baton Rouge City Court on December 10, 2014.
The Court further adopts the Appellee's brief as its written reasons.
The 19th JDC signed a judgment in accordance therewith on January 22, 2015.
Review by the First Circuit and Supreme Court
Thereafter, Exxon applied for supervisory and/or remedial writs with the Louisiana Supreme Court. The supreme court granted writs and remanded the matter to this Court for consideration under our supervisory jurisdiction. See Aaron v. Exxon Mobil Corp. , 2015-0045 (La. 4/10/15), 163 So.3d 800.
On remand,[19] this Court issued the following action:
WRIT GRANTED . This matter is remanded to the City Court of Baton Rouge for a determination of whether a stipulation between the parties or other evidence, including a judicial admission, was introduced as to whether Foster Wheeler Corporation installed the elbow pipe that ruptured in the East Coker Unit, whether that pipe was different from that stated in the design and building specifications for that unit, and whether the ruptured pipe caused or contributed to the alleged injuries suffered by the plaintiffs. Based on the record, the trial court should make a determination of whether Foster Wheeler Corporation was at fault, and if so, the percentage of fault attributable to Foster Wheeler Corporation. See La. Civ. Code arts. 2323 and 2324. See also La. Code Civ. P. arts. 1812(C) and 1917(B).
GH
WRC
JMG
Aaron v. ExxonMobil, Corp. , 2015-1829 (La. App. 1 Cir. 3/08/16) (unpublished writ action ).
Thereafter, Exxon applied for supervisory and/or remedial writs in the Louisiana Supreme Court, which issued the following action:
Granted. The judgment of the court of appeal is amended to provide that the city court should also reconsider its damage awards in this matter pursuant to the standards set forth in Howard v. Union Carbide Corp., 09-2750 (La. 10/19/10), 50 So.3d 1251.
*214 SJC
BJJ
JLW
GGG
MRC
JDH
KNOLL, J., dissents and assigns reasons. ["I would deny the writ for the reasons I assigned in my dissent in Howard v. Union [Carbide] Corporation , 09-2750, pp. 1-3 (La. 10/19/10), 50 So.3d 1251, 1258-59."]
Aaron v. Exxon Mobil Corp. , 2016-1072 (La. 9/16/16), 201 So.3d 241.
Based on the directives of this Court and the supreme court, the city court was charged with: 1) reviewing the testimony and evidence received at the trial of this matter to determine whether, based on the record, Foster Wheeler was at fault, and if so, the percentage of fault attributable to Foster Wheeler; and 2) reviewing the testimony and evidence received at the trial of this matter and reconsidering its damage awards pursuant to Howard v. Union Carbide Corp. , 2009-2750 (La. 10/19/10), 50 So.3d 1251. Neither this Court nor the supreme court ordered a new trial for the receipt of additional evidence and testimony.
Remand to City Court
Following remand, the city court heard oral arguments on January 6, 2017.[20] Thereafter, the city court signed a judgment after remand on May 1, 2017, which vacated and amended, in part, its prior February 24, 2014 judgment. The city court's May 1, 2017 judgment after remand decreed that Exxon was 100% at fault. The judgment after remand further vacated and amended the previous damage awards to the trial plaintiffs as follows: (1) $2,500.00 to Gloria H. Poole; (2) $2,500.00 to Patricia A. Brue; (3) $2,500.00 to Dorothy J. Browder; (4) $1,250.00 to Barbara W. Burks; (5) $2,500.00 to Doris J. Vondo; and (6) $2,500.00 to D'Ann L. Scott. The city court also issued written reasons for judgment on May 1, 2017.
Review by the First Circuit and Supreme Court Following Remand
Exxon appealed the city court's May 1, 2017 judgment after remand to the 19th JDC.[21] After briefing and oral arguments, which were held on November 9, 2017, the 19th JDC took the matter under advisement. Thereafter, on December 4, 2017, the 19th JDC affirmed the city court's May 1, 2017 judgment after remand and adopted the brief of the trial plaintiffs as its written reasons for judgment. On January 9, 2018, the 19th JDC signed a judgment in accordance with its oral ruling.
Thereafter, Exxon applied for supervisory and/or remedial writs in the Louisiana Supreme Court, which issued the following action:
Granted. See per curiam. ["PER CURIAM . Writ granted for the sole purpose of transferring the application to the court of appeal for briefing, argument and full opinion under its supervisory jurisdiction. La. Const. art. V, § 5 (A); La. Const. art. V, § 10 (A)."]
SJC
MRC
JTG
JOHNSON, C.J., would deny.
WEIMER, J., would grant and docket.
*215 GUIDRY, J., additionally concurs and assigns reasons. ["Review on remand should ensure strict compliance with this Court's earlier order in this case. Aaron v. Ex[x]on Mobil Corp. , 16-1072 (La. 9/1[6]/[16] ), 201 So.3d 241."]
HUGHES, J., would deny.
Aaron v. Exxon Mobil Corp. , 2018-0009 (La. 3/9/18), 237 So.3d 1184.
Following the transfer of the matter to this Court, the parties timely submitted briefs, and oral arguments were held on September 25, 2018. We now consider the merits of the appeal as an application for supervisory writs pursuant to our supervisory jurisdiction. See La. Const. art. V, §§ 5 (A), 10 (A), and 16 (B); see also Miazza , 34 So.3d at 849 ; Caire , 379 So.2d at 1057 ; Tower Credit, Inc. , 194 So.3d at 64.
LAW AND DISCUSSION
In reviewing the city court's judgment after remand, the 19th JDC functioned as an appellate court. Thus, this Court owes no deference to the 19th JDC's factual findings or legal conclusions, just as the supreme court owes no deference to the state's courts of appeal. See La. C.C.P. art. 5001(B) ; cf. Carpenter v. State, Dep't of Health and Hosps. , 2005-1904 (La. App. 1 Cir. 9/20/06), 944 So.2d 604, 608 n.2, writ denied, 2006-2804 (La. 1/26/07), 948 So.2d 174. Accordingly, this Court will conduct its own independent review of the record, applying the appropriate standards of review.
The appropriate standard for appellate review in this case is the manifest error-clearly wrong standard, which precludes the setting aside of the city court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. See Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC , 2014-2592 (La. 12/8/15), 193 So.3d 1110, 1115. It is well settled that a court of appeal may not set aside a fact-finder's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." See Stobart v. State through Dep't of Transp. and Dev. , 617 So.2d 880, 882 (La. 1993). A reviewing court may not merely decide if it would have found the facts of the case differently. Hall v. Folger Coffee Co. , 2003-1734 (La. 4/14/04), 874 So.2d 90, 98. The Supreme Court has proclaimed a two-part test for the reversal of a fact-finder's determinations: (1) the reviewing court must find from the record that a reasonable factual basis does not exist for the finding of the trier-of-fact, and (2) the reviewing court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). See Lomont v. Myer-Bennett, 2014-2483 (La. 6/30/15), 172 So.3d 620, 633.
Notably, reasonable persons frequently can and do disagree, but where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). In this regard, the reviewing court must give great weight to factual conclusions of the trier-of-fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. See Perkins v. Entergy Corp. , 2000-1372 (La. 3/23/01), 782 So.2d 606, 612-13. Accordingly, on review, the court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently, and when findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference *216 to the trier-of-fact's findings. Rosell , 549 So.2d at 844-45.
Although deference to the fact-finder should be accorded, the Louisiana Supreme Court has instructed that a reviewing court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the fact-finding tribunal. See Ambrose v. New Orleans Police Dep't Ambulance Serv. , 93-3099 (La. 7/5/94), 639 So.2d 216, 221. Nevertheless, even though we are required to give deference to the trier-of-fact's findings, we are not obliged to "rubberstamp" all factual determinations made by the fact-finding tribunal. See Lomont , 172 So.3d at 633. The issue to be resolved on review is not whether the fact-finder was right or wrong, but whether the fact-finder's conclusion was a reasonable one. See Rosell , 549 So.2d at 844.
This matter consisted of four days of live testimony in which the record undisputedly shows that the city court was actively involved and participated.[22] In our review, we are faced with a cold transcript consisting of thirty volumes. We are tasked with reviewing the city court's factual findings for error, all the while paying heed to the fact-finder's broad discretion in credibility determinations.
Assignment of Error No. 1: Allocation of Fault
In their first assignment of error, Exxon argues that the city court erred in imposing 100% fault on Exxon and failing to impose any fault on Foster Wheeler, a non-party to this litigation. Exxon argues that Foster Wheeler was solely responsible for creating the hazard that resulted in the fire. The court is required to determine the fault of all persons causing or contributing to injury, death, or loss, regardless of whether the person is a party to the action or a nonparty, and regardless of the theory of liability asserted against that party. See La. C.C. art. 2323. Where non-parties are claimed by a defendant to be at fault in causing damages to the plaintiff, the burden shifts to the defendant to show the fault of the non-party by a preponderance of the evidence. See La. C.C.P. arts. 1917(B) and 1812(C) ; see also Flipping v. JWH Properties, LLC , 50,648 (La. App. 2 Cir. 6/8/16), 196 So.3d 149, 157-58 ; Parker v. Templet , 2011-0095 (La. App. 1 Cir. 2/10/12), 2012 WL 601843, at *2 (unpublished ). Proof by a preponderance of evidence means that the fact or cause sought to be proved is more probable than not. James v. McHenry , 36,098 (La. App. 2 Cir. 9/18/02), 828 So.2d 94, 95.
Following the initial trial, the city court rendered judgment in favor of the trial plaintiffs on their negligence claims, reasoning that "[Exxon] had a duty to maintain and operate the Baton Rouge refinery in a manner that would not endanger the health of the local residents. [Exxon] breached this duty ... [, and] [Exxon's] breach was the proximate cause of the Trial Plaintiff[s'] damages...." After directed by this Court to consider whether Foster Wheeler was at fault for the failure of the piping elbow and the resulting fire, and if so, the percentage of fault attributable to Foster Wheeler, the city court rendered judgment after remand, decreeing "[Exxon] is found to be 100[%] at fault in this action."
On appeal, Exxon argues that Foster Wheeler, not Exxon, was solely responsible for the design, construction, and testing of the component parts of the East Coker Unit, making Foster Wheeler solely at fault for installing a piping elbow made of the wrong material. Exxon argues that *217 it had no actual knowledge that Foster Wheeler had installed a piping elbow made of the wrong material. Contrary to the plaintiffs' argument, Exxon further contends it should not have discovered the carbon steel piping elbow negligently installed by Foster Wheeler by conducting positive material identification ("PMI") tests on every pipe and fitting in every coker unit because such an expectation is unreasonable. Exxon further avers that its program for testing pipe-wall thickness likewise met or exceeded industry standards. Finally, Exxon avers that the majority of, if not all of, the fault should be placed on Foster Wheeler because between the owner of a thing containing a hazard and the party who created the hazard, the majority of fault should be allocated to the party who created the hazard.[23]
The city court provided eleven pages of detailed, thorough reasons for judgment after remand, discussing the allocation of 100% of the fault in this action to Exxon and its application of the Watson factors to the facts of this case. See Watson v. State Farm Fire and Casualty Insurance Co. , 469 So.2d 967, 974 (La. 1985). Therein, the city court stated:
The sole cause of the explosion was [Exxon's] failure to inspect both before [it] took control of the Unit and after [it] took control of the Unit, and down through the years.
It is undisputed that [Exxon] and its predecessor in interest, Humble Oil, contracted with Foster Wheeler Corporation to design and build the East Coker Unit at the [Exxon] Plant in Baton Rouge, Louisiana on Scenic Highway. [Exxon] accepted the unit without inspection and, as owner and operator of the unit, placed the Unit in operation. As to the design of the unit by Foster Wheeler, it included the use of [a] 5 Chrome ½ moly steel elbow, as opposed to the pipe elbow composed of Carbon steel, which was mistakenly installed.
From the testimony of the witnesses and experts used by [Exxon] and the Plaintiffs, Exxon was aware of their vulnerability as to the carbon steel elbow piping having been installed by the contractor, Foster Wheeler, and not the design specific, 5 Chrome, ½ moly steel elbow. Notwithstanding, [Exxon] never corrected the serious weakness in the system nor did they require Foster Wheeler to correct it. The correction should have been possible during any plant shutdown, or even without the shutdown of the Unit. This was not done, and some 30 years later on August 2, 1993, an explosion and fire occurred destroying the Unit, causing death and injury within the plant, and seriously and adversely affecting the adjacent communities.
The city court held that Foster Wheeler was not negligent, concluding "that [Foster Wheeler] has no complicity in the events that ultimately caused the piping to rupture." Following our review of the record, including the city court's extensive reasons for judgment after remand, we conclude that Exxon failed to demonstrate-by a preponderance of the evidence-that Foster Wheeler's negligence contributed to the plaintiffs' injuries. See La. C.C.P. arts. 1917(B) and 1812(C) ; see also Flipping , 196 So.3d at 157-58 ; Parker , 2012 WL 601843, at *2.
We proceed to review the record for manifest error on the city court's allocation of fault. The allocation of fault is *218 within the sound discretion of the trier-of-fact and will not be disturbed on appeal in the absence of manifest error. Duncan v. Kansas City Southern Railway Co. , 2000-0066 (La. 10/30/00), 773 So.2d 670, 680-81, cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001) ; Edmond v. Cherokee Insurance Company , 2014-1509 (La. App. 1 Cir. 4/24/15), 170 So.3d 1029, 1036-37. If an appellate court finds a "clearly wrong" allocation of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively, which is reasonably within the fact-finder's discretion. Hebert v. Rapides Parish Police Jury , 2006-2001 (La. 4/11/07), 974 So.2d 635, 654-55, on reh'g (Jan. 16, 2008). The Louisiana Supreme Court has instructed that in allocating fault between the parties, the trier-of-fact is bound to consider the nature of each party's wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed. Watson , 469 So.2d at 974. In assessing the nature of the parties' conduct, factors that may influence the degree of fault allocated include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances that might require the actor to proceed in haste, without proper thought. Watson , 469 So.2d at 974 ; Goza v. Par. of W. Baton Rouge , 2008-0086 (La. App. 1 Cir. 5/5/09), 21 So.3d 320, 331, cert. denied, 560 U.S. 904, 130 S.Ct. 3277, 176 L.Ed.2d 1184 (2010). These factors also guide an appellate court's determination as to the highest or lowest percentage of fault that could reasonably be assessed to each party. Clement v. Frey , 95-1119 (La. 1/16/96), 666 So.2d 607, 611. We must be mindful that the allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and that any allocation by the fact-finder within that range cannot be "clearly wrong." See Hebert , 974 So.2d at 655 ; Clement , 666 So.2d at 611.
Considering the nature of each party's wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed, we utilize the Watson factors to guide our determination as to the highest or lowest percentage of fault that could reasonably be assessed to each party. After reviewing the entire record, we find that the city court did not err in its allocation of 100% fault to Exxon.
Because the city court found that Foster Wheeler was not negligent, the city court did not consider Foster Wheeler in its allocation of fault. See Duzon v. Stallworth , 2001-1187 (La. App. 1 Cir. 12/11/02), 866 So.2d 837, 854, writ denied sub nom., Duzon ex rel. Cmty. of Acquets and Gains v. Stallworth, 2003-0589 (La. 5/2/03), 842 So.2d 1101, and writ denied, 2003-0605 (La. 5/2/03), 842 So.2d 1110. As to the fault allocated to Exxon, the city court considered the Watson factors and found that Exxon's conduct involved an awareness of the danger and how great a risk was created by the installation of a piping elbow in the East Coker Unit made of the wrong material. Under the original contract between Humble Oil (Exxon's predecessor) and Foster Wheeler, Humble Oil had the right to appoint representatives to witness the construction, tests, and inspections of the component parts of the East Coker Unit prior to the spraying of asbestos on the pipes, but did not do so. Exxon could have also rejected the unit until it had an assessment done as to the correctness of the construction in accordance with the plans and specifications. Exxon's failure to oversee the construction, *219 conduct inspections, or order an assessment as to the correctness of the East Coker Unit's construction in accordance with the design plans were conscious actions that necessarily involved adverting to, or consciously considering the risk, or possible danger that the East Coker Unit was not properly constructed.
As owner of the East Coker Unit for more than thirty years, Exxon retained ultimate responsibility for maintaining the East Coker Unit in a reasonably safe condition. Despite this, Exxon failed to make inspections, repairs, or replacements in a reasonably prudent manner. For example, the record reveals that later-constructed portions of the East Coker Unit contained parts made of carbon steel, as opposed to chrome-moly. For example, an April 25, 1988 "Near Miss Report" details a replacement spool pipe installed in 1978 that was made of carbon steel. Similarly, an "Inspection History Report," dated December 9, 1993, memorializing an inspection conducted on September 7, 1982 details a small bore instrument piping made of carbon steel that was threaded and screwed onto existing piping. Exxon's failure to inspect the work done constructing, repairing, and replacing parts of the East Coker Unit, which contributed to weaknesses in the unit, had a direct causative impact on the accident that occurred.
Therefore, we find that there is a reasonable factual basis for the city court's finding that Exxon was 100% at fault for the plaintiffs' injuries. Accordingly, we affirm the city court's allocation of 100% fault to Exxon.
Assignment of Error No. 2: Damages
In its second assignment of error, Exxon argues that the city court's damage awards are excessive and violate the supreme court's order to reconsider the awarded damages in light of Howard , 50 So.3d 1251. See Aaron , 201 So.3d 241.
The trier-of-fact is accorded much discretion in fixing general damage awards. La. C.C. art. 2324.1 ; Cheramie v. Horst , 93-1168 (La. App. 1 Cir. 5/20/94), 637 So.2d 720, 723. The discretion vested in the trier-of-fact is great, even "vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp. , 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier-of-fact. Wainwright v. Fontenot , 2000-0492 (La. 10/17/00), 774 So.2d 70, 74 ; Youn , 623 So.2d at 1260. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier-of-fact. Youn , 623 So.2d at 1260.
Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the trier-of-fact abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Theriot v. Allstate Ins. Co. , 625 So.2d 1337, 1340 (La. 1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. Youn , 623 So.2d at 1261. It is only when the award is, in either direction, beyond that which a reasonable trier-of-fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Id. Only after analysis of the facts and circumstances peculiar to the particular case and *220 plaintiff may an appellate court conclude that the award is inadequate. Theriot , 625 So.2d at 1340.
If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. Prior awards under similar circumstances serve only as a general guide. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. Id.
In Howard , a chemical leak that occurred at a plant in Taft, Louisiana, owned by the defendant, Union Carbide, from ten o'clock one night until three o'clock the following afternoon, vaporized 4.6 million pounds of naphtha and dispersed the naphtha vapor into the surrounding communities. Howard , 50 So.3d at 1253. Affected individuals sustained irritation of the eyes, nose, and throat, as well as headaches, nausea, dizziness, stinging and tearful eyes, stinging nasal membranes, sore throat, coughing, and a sensation of almost feeling drunk. None of the affected individuals sought or required medical attention, had to evacuate the area, or missed any work or school. The symptoms resolved in a day and could be treated with over-the-counter medication such as Visine. Id. at 1254.
The plaintiffs instituted a class action, and a trial of certain randomly-selected claimants was held to determine whether the claimants were exposed to the naphtha fumes; whether they suffered compensable damages; and the amount of their damages. Id. at 1253-54. The supreme court granted certiorari to review the quantum of general damages awarded by the district court in Howard . Five of the plaintiffs who were in the plant at the time of the leak were awarded $3,500 each, which the supreme court held was excessive and reduced to $500 each. One plaintiff, who was working near the plant on the night of the leak, was awarded $2,500, which the supreme court held was excessive and reduced to $250. Two plaintiffs residing in a nearby town (Montz, Louisiana) were awarded $2,000 each, which the supreme court held was excessive and was reduced to $150 each. Four plaintiffs residing in a nearby town near the fringe of the exposure area (Killona, Louisiana) were awarded $1,500 each, which the supreme court held was excessive and reduced to $100 each. Id. at 1254, 257. The supreme court held that "the damages proven, such as eye, nose, and throat irritations, are not unlike the symptoms suffered by persons afflicted with common seasonal allergies. There is simply no reasonable relationship between the claimants' injuries, which might be characterized as mere annoyances, and the damage awards." Id. at 1256.
Following remand and with the instruction to consider the damage awards pursuant to the standards set forth in Howard , the city court vacated and amended its damage awards to the trial plaintiffs as follows: (1) $7,500.00 to Gloria H. Poole reduced to $2,500.00; (2) $7,500.00 to Patricia A. Brue reduced to $2,500.00; (3) $7,500.00 to Dorothy J. Browder reduced to $2,500.00; (4) $4,000.00 to Barbara W. Burks reduced to $1,250.00; (5) $7,500.00 to Doris J. Vondo reduced to $2,500.00; and (6) $7,500.00 to D'Ann L. Scott reduced to $2,500.00.
As previously mentioned, the city court provided eleven pages of detailed, thorough reasons for judgment after remand. Each of the six trial plaintiffs' situations was thoroughly examined in determining the amount of damages. The city court reasoned:
*221 The Plaintiffs and their losses in the Howard v. Union Carbide case are very distinguishable from the [Aaron ] case. Generally[,] in the Aaron case, to distinguish it from [ Howard ], the following facts existed, to wit:
(1) The plaintiffs in the [Aaron ] case lived close to the plant, some closer than others;
(2) In the [Aaron ] case, there was an explosion and fire of such a degree as to cause fumes, chemical releases, a wide field of debris and other particulate matter directly from the explosion and fire to spread over the communities and fall on their homes, cars, yards, streets, and all areas in between, and themselves;
(3) They were directed to "shelter in place";
(4) They were directed to turn off their air conditioners (in the month of August in South Louisiana);
(5) They were directed not to touch the debris and particulate matter that was falling from the sky and settling all over their community, but this was only on the second day; they were not told the nature of the debris [;]
(6) There were police cars, ambulances, fire trucks[,] and hazmat trucks in their neighborhoods outside of the chemical plant;
(7) Their communities were invaded by persons in "space type" white jump suits with appropriate gear to begin and complete cleanup and retrieval of the contaminated debris and postulate matter in the atmosphere and settling all over the community, including planting itself in the grass and plants in their yards; but they were not given any personal protective equipment[;]
(8) They were in the "Zone of Danger", and they knew it;
(9) The plaintiffs, as to physical injuries, complained of:
a. irritated and watery eyes;
b. irritation to throat;
c. irritation and aggravation to the membranes in the nose;
d. nausea and vomiting;
e. dizziness; and
f. fear and fright.
(10) Their symptoms lasted for more than one day.
[...]
The Plaintiffs in the [Aaron ] case complained of: watery eyes, irritation to the eyes, noses[,] and throat. Some testified that they experienced these conditions as well as nausea and vomiting. Generally, each one testified of the fear and fright that they experienced after finding out what happened, and that there might be some long term adverse health condition that would surface from this exposure at some point in their lives. They testified that no one from [Exxon] communicated with them, nor offered them protection.
[...]
In the instant case[,] [Exxon] never attempted to provide any information to the residents, who were concerned and very frightened for their health and safety, and that of their loved ones. [Exxon] did not attempt to mitigate the losses to the community by providing instructions for safety, sending medical teams into the communities to talk with the residents and treat if necessary, provide any instructions as to the emission and the content of the emissions-whether deadly or otherwise. Nor did [Exxon] offer any assistance to them.
The plaintiffs were exposed for some time to the emissions and releases since *222 there was no immediate warning signal. They were still asleep with their air conditioners on, bringing the substance into their homes. Ultimately[,] most of the plaintiffs moved from their homes in the neighborhood, seeking safer communities that they could afford. Therefore, contrary to the rationale in the Union Carbide, supra case, these plaintiffs suffered quite a bit more than "nuisance" allergy-like symptoms. They were impacted and so were their lives.
This Court has considered the remand of the Higher Courts; has considered their concern and heeded their suggestions. However, this Court strongly believes that these communities of people suffered from this incident in many ways, which includes physical injuries, emotional and mental distress, contamination to their properties which they could not afford to move from, and physical suffering.
We have carefully examined the arguments of Exxon regarding the alleged errors in the damage awards made by the city court. We have individually considered the claims of the trial plaintiffs, giving particular attention to each plaintiffs proximity to the release site; the evidence of her symptoms; the nature and duration of the symptoms; whether medical treatment was sought, and if so, the diagnosis received; whether each plaintiff was required to shelter-in-place or evacuate from her home; and whether each plaintiff experienced fear and fright. The city court found that the trial plaintiffs experienced physical symptoms such as burning, irritated, and red eyes, sore throat, nausea, vomiting, and trouble breathing. These physical symptoms lasted for a few days to several weeks. The city court concluded that the trial plaintiffs also experienced fear and fright based on the ensuing emergency and environmental response at the plant and in their community following the explosion and fire. Responders clad in white "space type" protective jumpsuits came into their communities to conduct testing and retrieve debris. The trial plaintiffs testified that they were not told whether the debris and ash blanketing their properties and belongings was harmful, nor whether there was anything harmful in the smoke they breathed. The trial plaintiffs were not provided with information or protective clothing, but were merely instructed not to touch anything. The trial plaintiffs experienced fear and fright regarding any adverse health effects that may arise as a result of the accident. In some instances, this fear lasted for months.
Based on our review of the entire record, as well as the city court's detailed reasons for judgment after remand, we find no manifest error in the factual findings made by the city court relative to its quantum determinations. Further, we find no abuse of the city court's broad discretion in the general damage awards made. In reaching this conclusion, we are extremely mindful of the holding of the supreme court in Howard , which does not, however, establish a bright line rule for evaluating this type of chemical exposure case. Rather, we believe the Howard court only confirmed a common sense approach to determining quantum in such occurrences. See Crowe v. Pearl River Polymers, Inc. , 2012-1323 (La. App. 1 Cir. 12/30/14), 2014 WL 7454995, at *5 n.8 (unpublished ). Therefore, we affirm the city court's damage awards after remand.
DECREE
Based on the foregoing, the writ application is denied. The city court's May 1, 2017 judgment after remand allocating 100% fault to the defendant, ExxonMobil, Corporation, and awarding damages to the trial plaintiffs in the following amounts-(1) $2,500.00 to Gloria H. Poole; (2) $2,500.00 *223 to Patricia A. Brue; (3) $2,500.00 to Dorothy J. Browder; (4) $1,250.00 to Barbara W. Burks; (5) $2,500.00 to Doris J. Vondo; and (6) $2,500.00 to D'Ann L. Scott-is affirmed. All costs associated with this matter are assessed to the defendant, ExxonMobil, Corporation.
WRIT DENIED; JUDGMENT AFTER REMAND AFFIRMED.
CHUTZ J., Concur

Pursuant to La. C.C.P. art. 5001(B), an appeal from a judgment "rendered by a city court located in the Nineteenth Judicial District shall be taken to the district court of the parish in which the court of original jurisdiction is located." By mandating that such appeals be filed in the 19th JDC, the Legislature granted appellate jurisdiction over the Baton Rouge City Court judgments to the 19th JDC and, likewise, divested this Court of that jurisdiction. See La. Const. art. V, §§ 5 (A), 10 (A), and 16 (B); see also Miazza v. City of Mandeville , 2010-0304 (La. 5/21/10), 34 So.3d 849 (per curiam ); Caire v. Stassi , 379 So.2d 1056, 1057 (La. 1980). However, this proceeding is within our supervisory jurisdiction pursuant to La. Const. art. V, §§ 5 (A) and 10 (A) and La. C.C.P. art. 2201. When a party files an appeal under these circumstances, our supreme court has directed that the appeal should be converted to an application for supervisory writs. Tower Credit, Inc. v. Bradley , 2015-1164 (La. App. 1 Cir. 4/15/16), 194 So.3d 62, 64.

For more background information on the East Coker Unit, see Exxon Corp. v. Foster Wheeler Corp. , 2000-2093 (La. App. 1 Cir. 12/28/01), 805 So.2d 432, 433-34, writ denied, 2002-0261 (La. 3/28/02), 812 So.2d 633.

See In Re 1993 Exxon Coker Fire Litigation , Master Docket No. 3:93-MD-2-BMGL-SCR (M. D. La.).

See Order , In Re 1993 Exxon Coker Fire Litigation , Master Docket No. 3:93-MD-2-BMGL-SCR, No. 93-MS-2-B-2 (M. D. La. July 28, 2000); Judgment , In Re 1993 Exxon Coker Fire Litigation , Master Docket No. 3:93-MD-2-BMGL-SCR, No. 93-MS-2-A-M2 (M.D. La. Aug. 8, 2000).

See Exxon Corporation v. Foster Wheeler Corporation, Texas Pipe Bending Inc., Tube Turns Technology, Inc., ABC Insurance Companies, and XYZ Insurance Companies , Docket No. 408,309, Division I,19th JDC, Parish of East Baton Rouge, State of Louisiana (La. Dist. Ct. Aug. 3, 2000), 2000 WL 35441896 (unpublished ).

See In Re 1993 Exxon Coker Fire Litigation , Master Docket No. 3:93-MD-2-BMGL-SCR, Nos. 3-.07-CV-348, 3:07-CV-349, 3:07-CV-350 (M.D. La. July 18, 2008 [Amended "Judgment and Findings of Fact and Conclusions of Law" signed Aug. 8, 2008] ), 2008 WL 2795146 (unpublished ).

See In re 1993 Exxon Coker Fire , 336 F. App'x 431 (5th Cir. 2009) (per curiam ) (unpublished ).

See Andre Aaron, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation , Docket No. 0704-02964-D, Division D, Baton Rouge City Court, Parish of East Baton Rouge, State of Louisiana. (It appeared that 386 of the 4,172 named plaintiffs in the city court action were named plaintiffs in the federal litigation.).

See Ayanna Abadie, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A. , Exxon Corporation , Docket No. 0704-02965-D, Division D, Baton Rouge City Court, Parish of East Baton Rouge, State of Louisiana. (It appeared that 887 of the 2,939 named plaintiffs in the city court action were named plaintiffs in the federal litigation.).

See Adlean McAlope, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation , Docket No. 0704-03054-A, Division A, Baton Rouge City Court, Parish of East Baton Rouge, State of Louisiana. (It appeared that 283 of the 1,450 named plaintiffs in the city court action were named plaintiffs in the federal litigation.).

Louisiana Civil Code article 2315(A), the general negligence article, states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

At the time of the explosion and fire, Louisiana law still recognized strict liability in La. C.C. arts. 2317 and 2322. The Legislature has eliminated strict liability in favor a negligence standard (except in cases of dogs, whose owners are responsible for damages caused thereby that the owner could have prevented and that did not result from the injured person's provocation of the dog. See La. C.C. art. 2321.). See 1996 La. Acts. No. 1, § 1, 1st Ex. Sess. (eff. Apr. 16, 1996) ). Accordingly, an owner or custodian of a thing and an owner of a building are responsible for damage caused by a ruin, vice, or defect in the thing/building where the owner/custodian possessed actual or constructive knowledge of the ruin, vice, or defect; the damage could have been prevented through the exercise of reasonable care; and the owner/custodian failed to exercise reasonable care. See La. C.C. arts. 2317, 2317.1, and 2322.

Exxon removed the three city court suits to the United States District Court for the Middle District of Louisiana on May 17, 2007, which automatically stayed the city court proceedings pursuant to 28 U.S.C. § 1446(d). See Andre Aaron, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation ; Ayanna Abadie, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation ; and Adlean McAlope, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation , Docket Nos. 3:07-CV-00348-BMGL-SCR, 3:07-CV-00349-BMGL-SCR, 3:07-CV-00350-BMGL-SCR (M.D. La. May 17, 2007). The federal court remanded the matters to city court on October 18, 2007. See Andre Aaron, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation ; Ayanna Abadie, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation ; and Adlean McAlope, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation , Docket Nos. 3:07-CV-00348-BMGL-SCR, 3:07-CV-00349-BMGL-SCR, 3:07-CV-00350-BMGL-SCR (M.D. La. Oct. 18, 2007).

The trial plaintiffs were Gloria H. Poole, Patricia A. Brue, Dorothy J. Browder, Barbara W. Burks, Doris J. Vondo, and D'Ann L. Scott. (We note that portions of the record utilize the spelling "Vando" instead of "Vondo," as well as "Deane" instead of "D'Ann." We will utilize the "Vondo" and "D'Ann" spellings for consistency.).

The Louisiana Code of Civil Procedure defines three types of judgments: an interlocutory judgment, which determines a preliminary matter in the course of an action, but does not determine the merits (see La. C.C.P. art. 1841 ); a final judgment, which determines the merits of the case in whole or in part (see La. C.C.P. art. 1841 ); and a partial final judgment, which disposes of some, but not all, of the issues on the merits, and in some instances, requires a designation of finality by the trial court (see La. C.C.P. art. 1915 ). Different rules govern the appealability of these three types of judgments. See La. C.C.P. arts. 2083(A), 2083(C), and 1915(B).

See La. Const. art. V, §§ 5 (A), 10 (A), and 16 (B); see also Miazza , 34 So.3d at 849 ; Caire , 379 So.2d at 1057 ; Tower Credit, Inc., 194 So.3d at 64.

Andre Aaron, et al. v. ExxonMobil Corporation, et al. , Docket No. C-631,599, Section 25, 19th JDC, East Baton Rouge Parish, State of Louisiana.

Gloria Poole, et al. v. ExxonMobil Corporation, et al. , Docket No. C-631,686, Section 27, 19th JDC, East Baton Rouge Parish, State of Louisiana.

Exxon's first supervisory writ application seeking review of the 19th JDC's January 22, 2015 judgment was denied on the showing made. See Andre Aaron, et al. v. ExxonMobil, Corporation f/k/a Exxon Company U.S.A., Exxon Corporation , 2015-0601 (La. App. 1 Cir. 11/4/15) (unpublished writ action ).

Andre Aaron, et al. v. ExxonMobil Corporation, et al. , Docket No. C-661,310, Division O, Section 25, 19th JDC, East Baton Rouge Parish, State of Louisiana.

Exxon filed a motion for new trial, seeking to set aside the city court's May 1, 2017 judgment after remand, which the trial plaintiffs opposed. Following a hearing, the city court denied Exxon's motion.

December 2 and 3, 2013, January 31, 2014, and January 6, 2017.

Citing Thompson v. Winn-Dixie Montgomery, Inc. , 2015-0477 (La. 10/14/15), 181 So.3d 656, 667 and Williams v. City of Monroe , 27,065 (La. App. 2 Cir. 7/3/95), 658 So.2d 820, 831, writs denied, 95-1998, 95-2017 (La. 12/15/95), 664 So.2d 451, 452.